## Pittsburg Bridge Company v. John Walker.

1. QUESTIONS OF FACT—*Who Are Fellow-Servants—Negligence.*—Who are fellow-servants and whether or not a defendant was guilty of negligence are questions for the jury, and their determination of them should not be disturbed upon such evidence as is contained in the record in this case.

Trespass on the Case, for personal injuries. Appeal from the Superior Court of Cook County; the Hon. NATHANIEL C. SEARS, Judge, presiding. Heard in this court at the March term, 1897. Affirmed. Opinion filed April 15, 1897.

JOHN A. POST and JOHN B. BRADY, attorneys for appellant.

FRANK SCALES, attorney for appellee; A. STUBBLEFIELD, of counsel.

MR. PRESIDING JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

In an action brought by the appellee to recover damages for a personal injury sustained by him while in the service of appellant, through the alleged negligence of the servants of the appellant, a verdict for $3,000 was returned in appellee's favor. From that verdict appellee remitted $1,000 and

the judgment for $2,000 entered against appellant is now appealed from.

Although assigned as error that the damages are excessive, all claim on that account is abandoned upon the argument.

The questions of whether appellee was injured through the fault of a fellow-servant, and whether the risk was not one that he assumed, are the most important ones in the case.

The appellant was engaged in constructing an iron structure known as the Halsted street bridge, in Chicago, and appellee had worked at and about the bridge as a common laborer for the appellant some three or four months, under a foreman or different foremen. The general superintendent was a Mr. Lyons, who told appellee to do whatever he was told to do by a Mr. Farnsworth, who is sometimes spoken of as assistant superintendent or foreman; again as foreman in charge of the structural iron work, at times, and who himself testified in behalf of the appellant, that on the day of the injury he was a " common workman the same as anybody else."

A Mr. Clark was the yard boss in charge of the yards where the bridge material was taken off railroad cars, sorted, and loaded upon a scow in the river for transportation to the site of the bridge.

Appellee was transferred to such yards, from work upon and about the bridge, about a month before the accident, and was there at work in what is spoken of as " Mr. Clark's gang" when he became hurt.

On the day in question Mr. Farnsworth went to the yards to get eight struts or sway braces that he said he wanted to go up between the towers of the bridge, and the work of getting them out began at once. Such pieces weighed from ten to fifteen hundred pounds apiece, and were from twenty to twenty-six feet long. They were handled by being loaded upon a handcar by means of a derrick, and then run down a hundred or hundred and fifty feet to near the scow where they were again lifted by an-

other derrick and swung around upon the scow.   In doing this work Farnsworth assisted on that day, although he had never done so before.   There was evidence that he was in haste to get the struts.

Because of some girders that were lying across the hand-car track, the car, loaded with four struts, could not at that time be got nearer than twelve or fourteen feet from the derrick.   Farnsworth hitched the derrick tackles to one of the struts, near the center, and the derrick being so far from the car the strut when lifted was dragged as well as raised, and one end caught and became wedged in the girders that lay across the track, and was held down while the other end was in the air, a few feet high.   Farnsworth then took hold of the end that was in the air, and appellee and Clark took hold of and tried to lift the other end loose.   Being unable at first to loosen it, appellee, either by order of Farnsworth or of his own volition, stepped over the strut and lifted upon it from that side.   The strut becoming loosened by the efforts of Clark and the appellee, it suddenly swung away from both Farnsworth's and their holds —the tackle having been kept taut and "on a very tight strain"— and appellant was struck and thrown or knocked over, and received the broken leg and other injuries of which he complained.

It does not appear that appellee had ever had any experience of handling such heavy material by a tackle operated on such a slant, although he knew all about the ordinary way of moving struts.   Farnsworth testified that "the tackles were leaded in maybe forty-five degrees."   Both Farnsworth and Clark were, as appellee believed, his superiors in authority, and were both men of many years' experience in the work of handling heavy iron work.   Although Farnsworth testified that he was, on that day, nothing but a common laborer, still, in all the three months that appellee worked at the bridge, Farnsworth was his foreman, and it is not claimed that appellee had any notice or information whatever of his reduction from such rank.   Clark was appellee's boss at the yard when the accident happened, and

appellee had a right to be warned of dangers that he did not know of, but of which both Clark and Farnsworth must have known.

There is no word of evidence that he was warned by either of them, but there is evidence that Farnsworth encouraged him, and even commanded him to step over the wedged strut and to give another lift at it until he, Farnsworth, might see whether he and Clark could not lift it loose.

Furthermore, Farnsworth had hold of the other end of the strut for the purpose, as he testified, of holding it so that appellee and Clark might get the other end clear. With no warning or explanation, appellee had a right to rely upon Farnsworth to hold and steady the iron so that he should not be injured. The fact that Farnsworth was unable to hold and steady it does not excuse appellant, if Farnsworth were in truth a vice-principal.

Upon the question of whether Farnsworth was a fellow-servant with appellee, we are satisfied the jury came to the correct conclusion that he was not.

As already stated, he had been, on all prior occasions in the course of the work, appellee's superior, and there was no claim of notice to appellee, or knowledge by him of any change in such relationship, and it is clear that appellee still believed him to be his superior. It is contended that Clark was the foreman over appellee, and not Farnsworth. Undoubtedly such was the fact in the absence of Farnsworth. But there was evidence that tended to show that Clark was subject to the orders of Farnsworth. Clark testified guardedly upon that subject. He denied that Farnsworth gave him orders, but admitted that Farnsworth came to him and said, " Jim, I want to get them struts or sway braces that go up between the towers," and that he, Clark, at once went and picked them out, and the work of moving them immediately began, and the load of four struts was put upon the hand-car, and run up to where it was to be transferred to the scow. Then, while Clark was away at the other end of the yard picking out the four remaining

Pittsburg Bridge Co. v. Walker.

struts for another load, Farnsworth fastened the tackles to the strut that was to be put aboard the scow, and the work proceeded under Farnsworth's directions, until the strut caught on the girder, which occurred before Clark came back. Ray, the laborer who drove the horse at the derrick that did the hoisting, took his signals from Farnsworth.

Farnsworth himself testified that when in the course of the bridge building he wanted material he would go down and have it got out. He said: "I would order Clark to load it on the car or bring it up there."

There can be no question, we think, but that Farnsworth had authority to direct Clark to get out the material, and that, fro n his general exercise of authority in the entire business, the appellee had the right to rely upon his presence at any part of the work as being that of a vice-principal.

From such evidence as we have stated, read in connection with the testimony of the appellee as to the express orders given to him by Farnsworth, and of Farnsworth's direction to him not to use a guy line, there ready for use, which appellee was about to attach to the strut to keep it from swinging around, we have sufficient evidence to sustain the verdict.

Who are fellow-servants, and whether or not the appellant was guilty of negligence, were questions for the jury, whose determination of them should not be disturbed unless upon evidence that this record does not contain.

Appellant contends that because one count of the declaration avers that appellee was familiar with the work being done, he could not rely upon the superior knowledge of Farnsworth in the method of doing it. That contention is fairly met by the further averment in the same count, that Farnsworth directed him as to the manner of removal, and refused to use a guy or tag line, but endeavored to hold the strut with his hands, whereby, etc.

We can not stop to discuss other points made by the appellant. None of them are, in our opinion, of sufficient weight to justify a reversal of the judgment, and it will therefore be affirmed.